[Crim. No. 3151.   Second Appellate District, Division One.—May 5, 1939.]

THE PEOPLE, Respondent, v. LOUIS SCHRADER et al., Appellants.

Ben Van Tress for Appellant Schrader.

Maurice Gordon for Appellant Gordon.

U. S. Webb, Attorney-General, R. S. McLaughlin, Deputy Attorney-General, Buron Fitts, District Attorney, and A. H. Van Cott, Deputy District Attorney, for Respondent.

YORK, P. J.—By an information the appellants and seven codefendants were charged with violating subdivision 2 of section 337a of the Penal Code which denounces as a crime the maintenance or occupancy of a place for the purpose of recording or registering bets on horse races.  The case was tried by the trial court sitting without a jury, and upon the evidence taken at the preliminary examination, resulting

in the conviction of all defendants as charged in the information.

Appellant Schrader prosecutes an appeal from such judgment of conviction, as well as from the order by which his motion for a new trial was denied; appellant Gordon appeals from the order denying his motion for new trial.

The record reveals that the premises here involved were located on the second floor of a building at the corner of Sixth Street and Western Avenue in the city of Los Angeles, consisting of a suite of three rooms: a large room, described at the trial as the "main room"; a small room referred to as room No. 2, which adjoined the main room on the west and paralleled the southern part thereof; and another small room referred to as room No. 3, which also adjoined the main room on the west and paralleled the northern half thereof. Entrance to room No. 2 was through a door leading from the main room, while the entrance to room No. 3 was through a door in the north wall of room No. 2. Defendants Sperling, Luboff and McFarland, together with some forty or fifty people, were congregated in the main room; defendants Harry Rubin, Paul Rubin and Nathan Klitnick were in room No. 2, and the two appellants and defendant Jackler were in room No. 3. The evidence for respondent consists entirely of the testimony of the three arresting officers.

With reference to the main room, Officer St. Charles testified in substance that on March 19, 1938, he saw defendants Sperling, Luboff and McFarland in the main room; that Sperling and Luboff were sitting within an enclosure and that McFarland was standing by the west wall where rundown sheets were tacked on a board; that he saw McFarland mark a race on the rundown sheets and that he, the said officer, gave Luboff some money and told him to place a bet on a horse; that Luboff accepted the money and recorded the bet on a slip of paper, whereupon Luboff put the money in a drawer and handed a slip of paper to Sperling, who filed it in front of him. Officer St. Charles also testified that he found a loud speaker in the main room which was connected with a teleflash located in room No. 2, and that he entered room No. 2 and saw six telephones on a table.

With reference to room No. 2, Officer Mulligan testified that he saw therein the defendants Paul Rubin, Harry Rubin and Klitnick sitting at tables upon which were certain betting

markers; that he did not see them do anything with the papers which were in that room; that he saw a telephone bill upon which was shown the name of Harry Rubin and the address of the said premises; that he had a conversation with defendant Harry Rubin, who stated that he did not rent the entire place; that he rented a space on the floor and that Paul Rubin and defendant Klitnick were in his employ.

With reference to room No. 3, Officer Ingham testified that he saw betting markers (exhibit F) on a table in said room which were placed directly in front of appellant Gordon; that he saw overnight entry sheets and some betting markers (exhibit G) lying on a table in front of defendant Jackler; and that he also saw some overnight sheets and betting markers (exhibit H) on the center table in front of appellant Schrader (or Weber); that he did not see anyone do anything with the papers (exhibit F) which were lying in front of appellant Gordon; that defendant Jackler "was writing that 314 on line 3 while he had the French phone to his head as I entered the room", referring to the betting marker exhibit G; and that he saw appellant Schrader writing on the betting marker which was in front of him (exhibit H). Officer Ingham then testified that he observed appellants and defendant Jackler for a minute or two and then showed them his badge and said: "Leave everything just where it is, because you are under arrest"; that as he entered the room he noticed a speaker on the west end of the desk or table in front of appellants; "One was sitting on each side of the table"; that the speaker (exhibit I) was in operation; and he heard the results of the fourth race at the Fair Grounds on that speaker. In reply to the question, "Now did you later check to find out whether or not this speaker was connected with anything?", he replied: "I found the wires going into the other room" (where the teleflash was located). He also testified that after he arrested the appellants he walked over behind defendant Jackler and took the telephone away from him and listened to some telephone conversations, to wit: "The party gave his initials E. W. and asked to place $1.00 to win on horse 641; . . . A party later gave the name of Edith Witt and asked to place a bet on horse 602, $2.00 to win; . . . While I was later in the room a man gave his name as Jack and $2.00 to win and

$2.00 for second on horse number 602. The same party Edith Witt asked to place $2.00 to win on 665''; he also testified that he made notations of these bets on betting markers, which four markers were introduced in evidence as People's Exhibit J.

When asked if he had a conversation with the defendants, referring to appellants Schrader and Gordon and the defendant Jackler, the following took place: ''A. I did. Q. When and where did you have the conversation? A. I had the conversation after the arrest was made in that small room in the presence of defendants Gordon, Weber (Schrader) and Jackler and myself. Q. And was there any force or violence used as to these three defendants? A. There was not. Q. Any offers of reward or immunity extended to them? A. No, sir. Q. State the conversation had with these three defendants.'' To which objection was made on the ground the *corpus delicti* had not been established, and that the conversations would not be admissible. ''The Court: I think it is sufficiently established that is all one establishment, three rooms. . . . The objection is overruled, you may proceed. . . . A. The first defendant that I questioned was Louis Weber (Schrader). I asked him what his duties were there. He said he took bets over the phone as the announcements came over the teleflash and marked them on the overnight entry sheets. I asked him how much he received and he said $5.00 a day. Asked how long he had been working there, he said about a week. I questioned the defendant Jackler 'Did you make these notations on that betting marker', he said he had. 'Did you make the notations on the overnight entry sheet in front of you', for that date, and he said he had. I said 'Do you work here regularly and how much do you receive.' He said no, he just came up there to help out for the day. I questioned the defendant Gordon and asked him what he did. He said he figured out the amount after results came over that speaker there, he figured out the winners and the amount they paid on that long betting tab there, referring to the betting tab in front of him.'' He further said that he remained in room No. 3 for an hour and took notations and questioned people while he was waiting for officers and cars to take the defendants to Central Station.

Appellant Gordon did not testify, but appellant Schrader took the stand in his own defense and testified that he was in the restaurant and candy business in the Washington Building, which fact was corroborated by the witnesses Hugh L. Dickson and O. B. Trompeter, who testified that for years they had been patrons of defendant Schrader's restaurant and candy business in downtown Los Angeles, where they saw him busily engaged approximately three days each week for a period of some ten years or more. Appellant Schrader further testified that he was not employed at the bookmaking establishment on Western Avenue and that he did not tell Officer Ingham that he received five dollars a day while working there; that on Saturday he usually took the day off, and it was his practice to meet his wife and daughter at the home of his mother-in-law in the vicinity of the Western Avenue address and from there they went some place for the afternoon; that it was his custom to bet on horses and he had been placing his bets over the telephone, but was told he could go to the Western Avenue address to personally place his bets and hear the results of the races; that he therefore dropped in at the bookmaking establishment at 11:30 A. M. on the particular Saturday in question; that since he did not pay for his bets as he placed them, he was keeping a record thereof on two small pieces of paper; that the main room was crowded and he asked if he could go some place where he might sit down and was shown into the small room No. 3, where he was arrested. In other words, he admitted that the premises in question were used as a bookmaking establishment and that he went there to place his individual bets upon races, but he denied that he was working there or that he recorded or registered bets for others.

Appellant Schrader, whose appeal will be first considered, urges that the evidence is insufficient to sustain a conviction of the crime charged in the information; and that a reasonable doubt has been raised as to appellant's guilt of the offense charged by the failure of the prosecution to show that he had written any of the betting markers, or that he was marking bets as a betting marker, and in view of his positive denial of the conversation testified to by Officer Ingham that appellant had been employed at the

address in question for about a week to record bets at a salary of five dollars per day.

Without that conversation in the record, the evidence against appellant Schrader consists only of the fact that he was present in the bookmaking establishment and was sitting at a table in front of some betting markers upon which he was writing. With reference to the testimony of the police officer, who related his conversation with appellant Schrader as hereinbefore set out, it is noteworthy that the trial court was extremely dubious of the verity in part of this officer's testimony, because at the hearing on the motion for a new trial the court said: ''I feel that probably this man (Schrader) was not getting five dollars a day for working there when he had his own business. I do not especially believe that part of the testimony.'' If we exclude that part of the testimony from consideration, then we have a conviction based on the fact that the appellant Schrader was present in the room where bets were being received; that he was writing on what the officer denominated ''a betting marker''; coupled with appellant Schrader's alleged statement to the officer that he ''took bets over the phone as the announcements came over the teleflash and marked them on the overnight entry sheets.'' So far as the alleged admission made to the officer by appellant Schrader is concerned, with a part of which the court was unimpressed, we have no hesitancy in saying that it is inherently improbable that a man conducting a legitimate business of his own of the size and caliber maintained by appellant Schrader in the Washington Building, to which he had devoted his entire time for a period of some ten years, and in which he employed several helpers, would be working without compensation in a bookmaking establishment. We say ''without compensation'' because of the declared disbelief of the trial court in the officer's testimony that appellant Schrader told him he was receiving five dollars per day for his services. Further, appellant as a witness in his own behalf denied that he was marking any bets on any paper, except those bets placed by himself, and although one of the arresting officers seized the paper upon which appellant was writing and the same was introduced into evidence as part of exhibit H, no effort was made by the prosecution in rebuttal to show that such writing was anything but a recordation of appellant's own bets made

by himself. Under familiar rules, therefore, we must assume that the exhibit in question was as described by appellant Schrader. The evidence against appellant Schrader falls far short of that *quantum* required to establish guilt beyond a reasonable doubt of the offense of maintaining or occupying a place for the purpose of recording bets on horse races. Manifestly, if a person not connected with but merely visiting a place maintained for receiving bets on horse races makes a bet himself and notes the same on a memorandum, he cannot be convicted of maintaining or occupying a place for the purpose of receiving and recording bets. That is all that is shown by the evidence against appellant Schrader. It is the maintenance or occupancy of a place wherein bets are received from others and recorded or registered which the law denounces as criminal under the statute with which we are here concerned.

As was said in the case of *People* v. *Tuttle,* 27 Cal. App. (2d) 647, 649 [81 Pac. (2d) 571], "The intent with which the act was done may be gathered from all the circumstances shown in evidence." The conduct and circumstances shown in connection with the activities of appellant Schrader are as compatible with innocence as with guilt, so far as the offense with which he is charged is concerned. As to the last-named appellant, it must be said as a matter of law that the judgment against him does not find ample support in the evidence.

As to appellant Gordon, who did not take the witness stand in his own behalf, nor deny the incriminating admissions made by him, the evidence was sufficient to warrant his conviction. (See *People* v. *Tuttle, supra,* and cases therein cited.)

For the foregoing reasons, the order denying the motion for a new trial as to appellant Leonard Gordon is affirmed. The judgment and the order denying the motion for a new trial as to the appellant Louis Schrader are reversed, and as to him the cause is remanded for a new trial.

White, J., concurred.

Doran, J., concurred in the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 17, 1939, and an ap-

plication by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on June 1, 1939.