[Crim. No. 3495. Second Dist., Div. Two. Nov. 7, 1941.]

THE PEOPLE, Respondent, v. DONALD H. GRECO, et al., Appellants.

Russell E. Parsons, F. Walter French and Phillip W. Erbsen for Appellants.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WOOD, J.—Defendants were charged in count I of the information with the violation of subdivision 2 of section

337a of the Penal Code and in count II they were charged with the violation of subdivision 1 of the same section. Having been found guilty on both charges at a jury trial, they have appealed from the judgments and from the order denying a new trial.

At about 2 o'clock in the afternoon of March 20, 1941, two police officers entered a confectionery and cigar store at 1009 Federal Boulevard in Sawtelle. This establishment, which had living quarters in the rear, was then being operated by defendant Wyre, who had operated it for about four years. As the officers entered Wyre was standing back of a show case and looking at a scratch sheet bearing date of that day but when he saw the officers he dropped a pencil which "was posed like he was about to make a notation on it." Several other scratch sheets were found on the counter bearing the dates March 20 and March 19. In a wastebasket behind the counter the officers found several torn betting markers which were identified as bookmaking paraphernalia. These sheets contained recorded bets on races run at various race tracks.

Defendant Greco was sitting at a table in the living quarters at the rear of the store when the officers entered. He had before him a sheet of paper identified as a pay-off, or collection, sheet which was shown to be part of the paraphernalia used by bookmakers. Greco was in the act of writing on a pad of paper. In response to an inquiry by one of the officers Greco stated that he did not have a car and that he intended to take a bus home but the officer found a key on his person which fitted an automobile in front of the premises. In the dashboard compartment of this automobile the officer found a number of betting markers and a number of papers showing the initials of various persons from whom certain sums were to be collected or to whom sums were to be paid. Greco admitted to the officer that he was collecting bets for someone else and asked the officer if he might be permitted to make a copy of the sheet that was on the table at the time of his arrest else he might "get fired." He stated that the man for whom he was collecting bets was known to him only as "Vick." He further stated that he was regularly employed by one of the newspapers but that in addition to his work he was collecting bets for the party known as "Vick." Greco testified concerning the various individuals whose initials appeared on the betting markers and from

whom he was supposed to make collections. Concerning his relations with his employer and some of the "customers" he testified in part: "Q. By the way, as to Vick, what is Vick's last name? Do you know his last name? A. I don't know it. Q. Did Vick give you the money, you say, to pay him? A. If there was a lot of pay-outs he would give me money to pay. Q. Would he give you money enough to pay all of these? A. Yes. Q. Here is another sheet with the name Izzy on it. You were supposed to collect $17.00 on that one? A. Yes. Q. Here is one for 'J. M.' Who is J. M.? A. That was another customer of his. Q. I know, and I took it from your testimony that he was one of the customers. Let's have his name, if you don't mind. A. I just know him by the initials. Q. Where did you meet J. M.? A. I used to meet him in front of the Elks. Q. What time would you usually meet him there? A. I would go there at about 11:00 o'clock to meet him. Q. Every day? A. Well, sometimes I would pay him. Q. Did you collect $68.80 is that correct? A. Yes sir. Q. He had a pretty bad day, I take it. Here is J. M. again. That was to collect $85.25, is that correct? A. Yes sir."

It is claimed that the district attorney was guilty of misconduct in his cross-examination of defendant Wyre. In the transcript the following appears: "Q. Now, Mr. Wyre, you said you were asked the question by your counsel were you taking bets there, and the answer was 'No.' Q. I beg your pardon? A. No sir. Q. Why, weren't you arrested in this city in August, 1940, and you admitted taking bets in that location?" The court sustained an objection to this question by the defense and remarked, "we are trying the defendants on this charge here."

It is argued that it was improper to question the witness concerning the taking of bets seven months prior to the time of the arrest and that the suggestion of the previous arrest of defendant should not have been made. Defendants were on trial on the charge of occupying an establishment for the purpose of recording wagers on horse races. It was shown in evidence that Wyre had in fact occupied the establishment in question for several years. In his endeavor to show by circumstantial evidence that Wyre was occupying the premises for the purpose of recording wagers the prosecutor was not limited to proof of the conduct of Wyre on the day of

his arrest but he could show any conduct of Wyre which tended to establish that he was in fact at the time of the arrest conducting the premises for the illegal purpose charged. It would not have been an abuse of discretion if the trial court had permitted the prosecution to prove that Wyre had admitted taking bets at the same premises within seven months of the time of his arrest. Although the prosecutor went too far in coupling with his question a suggestion of Wyre's previous arrest, it cannot be reasonably argued that a different verdict would have been rendered if the reference to a previous arrest of Wyre had not been included in the question. The error is not of such nature as to call for a reversal of the judgments.

Defendants properly complain of the error of the trial court in giving instructions to the jury on the offense charged in count I of the information. The court gave to the jury the following instruction: "Defendants are charged in count I of the information with a violation of section 337a, subdivision 2, of the Penal Code of California, which makes it unlawful for any person to either for gain, hire, reward, gratuitously and otherwise, have in their possession book and books, paper and papers, apparatus, device and paraphernalia for the purpose of recording and registering any bet and bets, and any purported bet or bets, and wager and wagers, and any purported wager and wagers, and of selling pools and purported pools upon the result and purported result of any trial and purported trial and contest and purported contest of skill, speed and power of endurance between beasts, to-wit horses." This instruction is clearly erroneous for it omits the principal element of the offense described in subdivision 2 of section 337a. This subdivision makes it a penal offense to *keep or occupy certain premises* therein designated for the purpose of recording bets. Under the instruction as given by the court defendants could have been convicted by mere proof that they had in their possession papers for the purpose of recording bets. The erroneous instruction calls for a reversal of the judgments as to count I of the information.

It is also contended by defendants that the evidence is insufficient to justify their conviction on count II, wherein it is charged that they engaged in "pool-selling" and "book-making" upon the result of horse races. Defendants in their

briefs refer to a number of decisions by the District Court of Appeal in which reversals were ordered where the convictions were had upon circumstantial evidence and now assert that the circumstantial evidence in the present case is no more convincing than was the evidence in each of the cases cited. But they refrain from referring to the late case of *People* v. *Newland,* 15 Cal. (2d) 678 [104 Pac. (2d) 778], in which, referring to cases now cited by defendants, the court said: "Anything stated in those cases which is inconsistent with the views herein expressed is disapproved." In the Newland case, where the defendant was convicted upon circumstantial evidence of the violation of subdivision 2 of section 337a, the court made an extensive review of the authorities and held that before the verdict of a jury which had been approved by the trial court can be set aside on appeal on the ground of the insufficiency of the evidence "it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below."

■ An application of the rule of the Newland case to the case now under review compels the conclusion that the evidence is sufficient to sustain the convictions on count II of the information. The jury could reasonably have inferred that the party referred to as "Vick" and the two defendants were engaged in what is commonly called the "business" of book-making or pool-selling; that Wyre conducted the premises on Federal Boulevard for the purpose of recording bets on horse races and did in fact take bets at that location; that Wyre was one of several "customers" who accepted bets on horse races for Greco's employer, "Vick"; that Greco was the collector or "pay-off" man who went from "bookie" to "bookie" in his spare time striking a balance with them for bets made; and that at the time of his arrest Greco had stopped at Wyre's establishment to strike a balance with Wyre on the "bookie business" which had been transacted there. These inferences are sufficient to sustain the convictions either on the theory that Wyre and Greco were aiding and abetting Vick in his book-making activities or on the theory that all three conspired together to engage in book-making or pool-selling.

The judgments and the order denying a new trial as to count II of the information are affirmed. The judgments and the order denying a new trial as to count I are reversed.

Moore, P. J., and McComb, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 4, 1941. Houser, J., and Carter, J., voted for a hearing.