[Crim. No. 4523.   Second Dist., Div. Three.   Dec. 1, 1950.]

THE PEOPLE, Respondent, v. ALPHONSE COPPLA,
Appellant.

John J. Bradley and Max Solomon for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller,
Deputy Attorney General, for Respondent.

VALLÉE, J.—Coppla and one Rochlin were charged in
count one of an information with having violated Penal Code
section 337a, subdivision 3, in that they did hold certain memo-

randa and papers which represented and referred to moneys bet on the result of horse races, and in count two with having violated Penal Code section 337a, subdivision 1, in that they did engage in pool selling and bookmaking on the result of a horse race. Both counts were based on the same facts. The court, without a jury, found Coppla not guilty of the offense charged in count one and guilty of the offense charged in count two. Rochlin was found not guilty on both counts. Coppla, referred to as defendant, appeals from the judgment, under which he was sentenced to six months in the county jail and placed on probation, and from the order denying his motion for a new trial.

On January 21, 1950, at 7 p. m., defendant, in an automobile, turned off Seventh Street in Los Angeles into an alley. He stopped the car in the alley and honked the horn twice. Rochlin, who had been standing in front of a newsstand near the alley, walked to the car. Defendant handed Rochlin four white sealed envelopes through the car window. Defendant and Rochlin were arrested immediately. One of the sealed envelopes had "Cook," one "Herb," one "Johnny," and one "Taxi" written on the outside. Seven sealed envelopes were in a brown paper bag on the front seat of the car. There was $68 in one envelope which had "$149.70" written on the outside. "California Digest" was in another sealed envelope. Some of the other sealed envelopes contained writings. In the locked trunk of the car the arresting officer found cards with names, numbers and symbols on them, 10 of them stamp-dated November 19, 1949, one stamp-dated January 21, 1950, and two blank cards stamp-dated November 26, 1949. All of the envelopes in the car were sealed.

A police officer testified that some of the papers in the sealed envelopes were owe sheets and betting markers for races held January 21, 1950, and that the cards found in the locked trunk of the car were betting markers. He testified that in Los Angeles bets on horse races are commonly made by a bettor who gives the money he wants to bet and the name of the horse he wants to bet on, to a bookmaker's agent. The agent makes a notation of the name or initials of the bettor, the horse, and the amount. He then telephones that information to a "phone spot." After the day's races have been run, the "phone spot" compiles an owe sheet for each agent showing the number of the horse bet on, the race, the name or initials of the bettor, the amount bet—whether win, place or show—, the position of the horse in the race, and the amount paid on that horse, if

anything. The owe sheets are then distributed by the bookmaker in charge of the "phone spot" to the agents so they may pay or collect from the bettor, as the case may be. Each agent receives the sheet showing the results of the bets which he has taken. He testified that the names written on the envelopes handed to Rochlin, and on some of those found in the car, were the names of agents who had taken bets indicated on the owe sheets.

The arresting officer testified that defendant told him that he was delivering the envelopes; that he did not know what was in them; defendant was asked why the envelope marked "$149.70" had only $68 in it; he said he did not know anything about that; he said he was delivering the envelopes for "Army"; that he did not know who "Army" was; that he picked these things up; he refused to say where. Defendant did not testify.

█ Defendant claims that the evidence is insufficient to establish that he "did willfully, unlawfully and feloniously engage in poolselling and bookmaking." We agree.

Penal Code section 337a, subdivision 1, provides that every person who engaged in pool selling or bookmaking, with or without writing, at any time or place is guilty of a public offense, and "This section shall apply not only to persons who may commit any of the acts designated in subdivisions 1 to 6 inclusive of this section, as a business or occupation, but shall also apply to every person or persons who may do in a single instance any one of the acts specified in said subdivisions 1 to 6 inclusive." To "engage in" is to be occupied in, to be employed in. (Webster's New Internat. Dict., 2d ed.) "Bookmaking" is "the making of a book of bets." (*People* v. *Bradford,* 95 Cal.App.2d 372, 378 [213 P.2d 37].) "Pool selling" is the "selling or distribution of shares or chances in a wagering pool." (Webster's New Internat. Dict., 2d ed.)

The evidence merely established that defendant was in possession of bookmaking paraphernalia. Section 337a is comprehensive and exhaustive in its denunciation of acts in connection with pool selling and bookmaking. Nowhere is the mere possession of bookmaking paraphernalia, without knowledge of the fact, denounced as an offense. We do not understand that respondent contends otherwise. Its claim appears to be that it can be inferred from the evidence that defendant was engaged in pool selling and bookmaking. In *People* v. *Greco,* 47 Cal.App.2d 628, 632 [118 P.2d 886], it was held that mere proof that the defendants had in their possession papers

for the purpose of recording bets did not establish that they kept or occupied certain premises for the purpose of recording bets, a violation of subdivision 2 of Penal Code section 337a.

There was no evidence that defendant was occupied or employed in pool selling or bookmaking in a single instance at any time or that he knowingly aided another in the making of a book of bets or in the sale or distribution of shares or chances in a wagering pool. There is no evidence that he knew the papers in the sealed envelopes were betting markers or owe sheets, or that he had any knowledge of the contents of the locked trunk. There is no evidence of the ownership of the automobile. There is no evidence that the writing on the envelopes, or on any of the material, was that of defendant. Without such evidence, it must be presumed that it was not in his handwriting. ■ The prosecution having presented as a part of its case the statement of the defendant that he did not know what the sealed envelopes contained, is bound by that evidence in the absence of proof to the contrary. (*People* v. *Toledo,* 85 Cal.App.2d 577, 581 [193 P.2d 953].) There was no proof to the contrary. ■ The fact that defendant handed four sealed envelopes to Rochlin does not prove that he was engaged in pool selling or bookmaking in the absence of some evidence from which it could be inferred that he knew the contents of one or more of the envelopes.

Defendant was acquitted of the charge that he held memoranda and papers which represented and referred to moneys bet on the result of horse races. This determination necessarily must have been predicated on the conclusion that defendant did not know that he was in possession of bookmaking paraphernalia. As he did not know that he was in possession of bookmaking paraphernalia, there is no evidence that he was engaged in pool selling and bookmaking. So far as appears, defendant was merely a messenger boy delivering envelopes, the contents of which were unknown to him.

Neither *People* v. *Steccone,* 36 Cal.2d 234 [223 P.2d 17], nor *People* v. *Ross, ante,* p. 116 [223 P.2d 85], is in point. In the Steccone case the two defendants were charged with conspiracy to ''keep and maintain rooms and places . . . with books, papers, devices and paraphernalia for the purpose of recording and registering bets and wagers on horse races.'' There was evidence of the actual receipt of money as bets on horse races and of payoffs to winners. There was also evidence

of the presence of *unsealed* bookmaking paraphernalia in the tavern of one defendant and in the home of the other, and of the placing of bets by one with the other. There was evidence of an attempt by one defendant to destroy a register of bets after he had been placed in custody. All of the elements of the offense charged were proved by the prosecution. Consequently it was held that the failure of the defendants to testify and explain the evidence against them could be considered by the jury "as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." The failure of a defendant to testify as to facts within his knowledge cannot be "used to supply a failure of proof by the prosecution" (*People* v. *Zoffel*, 35 Cal.App.2d 215, 221 [95 P.2d 160]), which is the case here and which was not the case in *People* v. *Steccone*. In *People* v. *Ross* the defendant was not charged with bookmaking or pool selling. He was charged "with violation of (1) Penal Code section 337a, subdivision 2 (occupying a room for purposes of recording or registering bets on horse races) ; (2) subdivision 4 (recording or registering bets) ; and (3) subdivision 6 (offering and accepting bets)." He was convicted of counts one and two and acquitted of count three. All of the elements of the offenses charged in counts one and two were proved by the prosecution. The failure of the defendant to testify could, therefore, be considered.

In the present case defendant was not charged with keeping or occupying a place with papers or paraphernalia for the purpose of recording or registering a bet (Pen. Code, § 337a, subd. 2), or with recording or registering a bet (subd. 4), or with being the occupant of a place and with permitting it to be used for any purpose prohibited by subdivisions 1, 2, 3, or 4, of section 337a (subd. 5), or with offering or accepting a bet (subd. 6). Defendant was acquitted of holding memoranda and papers which referred to moneys bet on horse races (subd. 3). He was charged with, and convicted of, engaging in bookmaking and pool selling, a violation of subdivision 1. The only evidence which, on any theory, can be considered as going to establish the corpus delicti of the offense of which defendant was convicted—bookmaking and pool selling—is the holding of memoranda and papers, in *sealed* envelopes, which referred to moneys bet on horse races. The necessary connotation of the acquittal of holding memoranda and papers which referred to moneys bet on horse races is that defendant

did not know that he had such memoranda and papers in his possession. Defendant's guilt of bookmaking and pool selling necessarily depended upon this knowledge. If he did not know that he was in possession of such memoranda and papers he could not be guilty of bookmaking or pool selling. ▆ There was not the slightest evidence that defendant engaged in bookmaking, the making of a book of bets, or in pool selling, the selling or distribution of shares or chances in a wagering pool, or that he aided and abetted another in so doing. It is, of course, not the law that mere aiding in an unlawful act, without guilty knowledge, is of itself an offense. The corpus delicti of the offense charged was not proved. In absence of prima facie proof of the corpus delicti, anything the defendant may have said that might be construed as an admission is not proof of anything.

The judgment and order denying the motion for a new trial are, and each is, reversed. The cause is remanded for a new trial.

Shinn, P. J., concurred.

WOOD (Parker), J.—I dissent. The defendant was apprehended in the act of delivering owe sheets for a bookmaker. He chose not to testify and explain the circumstances which placed him in such a predicament. His lawyer argues, in effect, that it was not proved that defendant knew what he was delivering. In my opinion there were several facts which together formed a basis for an inference that defendant knew he was aiding a bookmaker. He was the driver of the automobile and the only person therein. On the front seat of the automobile and to his right there was a bag containing seven sealed envelopes in each of which there were papers commonly used by bookmakers. In the locked trunk of the automobile there were several cards (not in envelopes) which were commonly used by bookmakers—one of the cards was dated January 21, 1950 (the date of the arrest). At the time of his arrest the defendant told the officers that he would put the automobile on a lot and "leave it for his wife to pick up." The defendant admitted that in delivering the envelopes he was "working for" "somebody" by the name of "Army." His answers to questions by the officers as to the name of the person he was "working for" were evasive. He told them he "picked these things up." He refused to tell where "he picked them up." No address was on any of the four enve-

lopes he delivered or on any of the seven envelopes in the bag. The only writing on each of the envelopes (except one on which was written ''$149.70'') was one initial, or two initials, or a one-word name which was in common use. On one envelope there was the letter ''H,'' and on another there were the letters ''B.L.'' On others there were the names, ''Joe,'' ''Al,'' ''Johnny,'' ''Herb,'' ''Whitie,'' ''Taxi,'' ''Cook,'' and ''Venice.'' Such common names constituted the only direction on the envelopes for the guidance of defendant in making the deliveries of ''these things'' in a city of approximately two million persons. At the time of the arrest, defendant said that ''he didn't *quite* know what he was doing, that his father-in-law had just passed away'' and ''he was quite upset.'' (Emphasis added.)

In my opinion the evidence shows that defendant exercised such dominion over the automobile (as the driver, sole occupant, and director of the disposition of it after the arrest) that it could reasonably be inferred (1) that he had access to the bookmaking papers in the locked trunk (which papers were not in envelopes), and (2) that he knowingly was in possession of the bookmaking card therein which was dated January 21, 1950 (the date of the arrest), and knowingly was in possession of the several other bookmaking cards therein which bore prior dates. In my opinion the presence of such bookmaking papers in the trunk, the wholly inadequate direction on the envelopes for their delivery, defendant's actual delivery of four such envelopes containing owe sheets, the presence of several other such envelopes in the front seat of the automobile, and the bizarre features of his employment as related by him, indicate that he knew what he was delivering. In my opinion, regardless of defendant's failure to testify, the bookmaking here involved ''was connected up'' with defendant. He was in actual and exclusive possession of many bookmaking papers, and he was caught in the overt act of delivering several of them. In my opinion the trial judge could reasonably have inferred that defendant knew that the envelopes contained bookmaking papers and that in delivering them he was aiding in bookmaking.

The prosecution having proved facts from which such an inference of knowledge on the part of defendant could be drawn, the failure of defendant to testify was of significance. The facts regarding his alleged employment and his alleged lack of knowledge of the contents of the envelopes were, of course, within his knowledge. It was within his power to

explain the circumstances which formed the basis for an inference that he knew he was aiding in bookmaking, if those circumstances could be explained. His failure to testify affords additional support for the judgment of conviction. In the case of *People* v. *Steccone*, 36 Cal.2d 234 [223 P.2d 17], the defendants were John Steccone and Peter Makris, and the evidence showed, among other things, that persons by the names of "Pete" and "John" were involved in bookmaking. The defendants therein, who did not testify, argued that the names were common names and the evidence did not warrant an inference that the defendants were the persons so involved. The court said at page 239: "But if 'Pete' did not mean Makris and 'John' did not mean Steccone, then appellants could and should have denied it. These were facts within their knowledge and power to dispute, but they failed to testify. So it was said in like circumstances in *People* v. *Adamson*, 27 Cal.2d 478, at pages 490-491 [165 P.2d 3]: '. . . if it appears from the evidence that defendant could reasonably be expected to explain or deny evidence presented against him, the jury may consider his failure to do so as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable.' " It was also said in that case at page 239 that a defendant's failure to testify as to facts within his knowledge cannot be used to supply a failure of proof by the prosecution, "but such is not the case here, as the record discloses numerous corroborative facts evidencing appellants' collaboration in bookmaking activities at their respective establishments." In *People* v. *Ross, ante,* p. 116 [223 P.2d 85], which involved bookmaking, the court said at page 121: "Defendant's failure to take the stand is significant." It was also said therein at page 122, in quoting from another case: " 'Such failure by him to explain or deny under oath the evidence woven about him was itself a potent fact for consideration by the trial judge and affords additional support for the judgment.' "

In *People* v. *Zoffel,* 35 Cal.App.2d 215 [95 P.2d 160], wherein it was said that a defendant's failure to testify cannot be used to supply a failure of proof by the prosecution, the court also stated that under the evidence therein certain articles, referred to in the evidence, were "not connected up to" the defendant. As hereinabove stated, in my opinion the envelopes involved in the bookmaking in the present case were "connected up" with the defendant.

In my opinion, the fact that defendant was found not guilty under count one, wherein he was charged with holding and forwarding papers which referred to money bet on a horse race, does not mean necessarily that the trial judge found that defendant did not know what was in the envelopes. It might be that the acquittal on count one was based upon a misinterpretation as to the meaning and scope of said section 337a, subdivision 3, under which defendant was prosecuted on count one. It is to be noted that the attorney for defendant, upon voir dire examination of an officer, established that at the time of the arrest at 7 p. m. on January 21, 1950, the last horse race at any place in the United States on said day had been run. It is also to be noted that said attorney then asserted that the defendant was "charged with a Subdivision 3, if your Honor please, which is for the purpose of being pledged, bet or wagered, the forwarding of money bets and so forth," and the attorney then argued that at 7 p. m. it would be impossible for the papers to be on account of the result of any race. If the trial judge interpreted said subdivision 3 in accordance with that argument of defendant's attorney and based the acquittal on count one upon such an interpretation, the acquittal on count one would not mean that the judge found that defendant did not know what was in the envelopes.

In my opinion the judgment of conviction should be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied December 26, 1950. Gibson, C. J., Shenk, J., and Spence, J., voted for a hearing.