[Crim. No. 3043.    First Dist., Div. Two.    Jan. 17, 1955.]

THE PEOPLE, Respondent, v. RALPH J. DONALDSON, Appellant.

Gregory S. Stout for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Arlo E. Smith, Deputy Attorney General, for Respondent.

KAUFMAN, J.—This is an appeal from a judgment of conviction after jury verdict, of a violation of subdivision 6 of section 337a of the Penal Code. Motion for new trial was denied. Probation having been likewise denied, defendant was sentenced to nine months in the county jail.

Defendant and appellant Donaldson was arrested in San Francisco on July 30, 1953, on Cedar Street which runs from east to west between Post and Geary, parallel to those streets, and connects Larkin with Polk Street. Inspector Overstreet of the Bureau of Special Services, San Francisco Police Department, who made the arrest, had appellant under observation in this area for some time before he approached him. He observed appellant get into a Buick sedan parked at the corner of Cedar and Larkin Streets on the north side of Cedar. He saw him looking at a newspaper later found to have been the San Francisco Examiner of the same date as appellant's arrest. Two men approached the car at different times and talked with appellant. Although Officer Overstreet was in a car with Officer Siegfried parked on the south side of Cedar Street about midway in the block facing Larkin, he was aided in his observation by a pair of binoculars.

After the man had left the car, appellant got out and entered a small enclosed area behind a tavern which is known as the Jay Room. A couple of moments later he returned to the street and walked to the corner of Cedar and Larkin. He paused a moment, then went across Larkin Street and entered a small doughnut shop. After a short time he re-

turned and again entered the small area behind the tavern. Shortly thereafter he returned to the car, then went into the Jay Room, and after about five minutes went back into the area behind the tavern for the third time.

When appellant left this area and returned to Larkin Street, Inspector Overstreet went the other way around to Post Street. By going through an apartment house, he gained access to the tradesman's entrance on Cedar Street which adjoined the small area behind the tavern. A board fence approximately 6½ feet in height separated the tradesman's entrance from the area behind the tavern, but the inspector was able to observe appellant through a crack in the fence when he arrived on the scene about 8 or 10 minutes later. Appellant removed some papers from his pocket, walked over to a wooden cabinet built around the gas and electric meters and which formed a kind of open shelf on the wall of the building in which the Jay Room tavern is located. Appellant looked at some papers, walked toward the fence and turned his back to it. Officer Overstreet then stepped upon a box, looked over appellant's shoulder at the papers which he was reading, and could see the particular piece of paper appellant was then looking at. Overstreet then walked out of the tradesman's entrance into the area to confront appellant. This took him about 10 seconds.

When appellant saw the officer, with whom he had had earlier contacts in the previous eight or nine years, he crumpled the papers with both hands, dropped them to the street, and walked toward Overstreet. The officer picked up the crumpled papers and examined them, having told appellant to remain where he was. These papers, 11 in all, two of which were cardboard matchbook covers, were introduced in evidence at the trial as People's Exhibit 1, and were identified by Officer Overstreet who had been qualified as an expert on bookmaking activities in San Francisco, as a record of bets on horse races. One of the papers, a matchbook cover from Walton's Bar had three bets recorded on the inside of it.

Appellant remained silent when Overstreet questioned him in regard to bookmaking activities. He asked the officer for a break this time and told Overstreet that he would never be bothered by him again.

Two pencils and a blank pad of paper were found in appellant's pockets. The San Francisco Examiner for July 30, 1953, page 4a from the sports section was found on the seat of the car in which appellant had been seated. Four

pieces of paper found in the areaway where appellant was arrested were also identified as records of bets by Overstreet, and The Daily Racing Form for July 28, 1953, characterized by Overstreet as "bookie" paraphernalia was found by the officer on top of the cabinet surrounding the gas and electric meters. By comparing the material found in the records of bets with the Examiner sports section one record of bets was determined to be for July 30, 1953, and three for July 29, 1953. Another group could not be identified as to date. It was the officer's opinion that appellant's method of operation was to take bets, phone them to a third person who would record them, and that appellant would then destroy the records he had made of the individual bettors.

On cross-examination Inspector Overstreet testified that he had not seen appellant write, nor had he asked him if the handwriting on the papers was his, nor was any scratch sheet or Turf Digest found upon appellant's person nor in any of the places where he was observed that day. Overstreet was questioned in regard to prior occasions when he had arrested and searched appellant, and over objection, attributed his reason for doing so to the fact that appellant was a known bookmaker, that he considered him a suspect when he saw him walking around that area talking to various persons, and had not known him to be engaged in any legitimate employment.

Officer Siegfried, who accompanied Overstreet on the day of appellant's arrest, testified that on July 19, 1953, he had observed appellant in the Jay Room talking to several men, that he then went to a telephone booth to place a call, and had in his hand a Daily Bulletin and a piece of paper. He heard the appellant talking on the phone, but as he was 15 feet away, he could not distinguish what was said. Similar testimony was given as to appellant's conduct on July 15.

Sergeant Marino of the San Francisco police was allowed to testify as to records of bets found on appellant's person when he was arrested on August 16, 1950, among which records were some recorded on match books from Walton's Bar, as were some of those in the present case. The official minutes of the superior court were then read into evidence showing that appellant had pleaded guilty to violation of subdivision 2, section 337a, Penal Code, bookmaking.

Appellant contends that the trial court committed prejudicial error in permitting the introduction of evidence of acts by appellant at times and places other than that for

which he was on trial. Appellant concedes that proof of another offense distinct from that for which a defendant is on trial is admissible if relevant. (*People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924].) ■ However, such evidence may not be admitted if its sole function is to demonstrate a general criminal propensity on the part of defendant even though it may show an earlier violation of the same or a similar statute by said defendant. (*People* v. *Cook,* 148 Cal. 334, 340 [83 P. 43]; *People* v. *Glass,* 158 Cal. 650, 658 [112 P. 281].)

■ The question of relevancy is of course primarily a question to be determined by the trial court. ■ That the trial court correctly determined that the evidence of appellant's arrest in 1950 was relevant to the issues in the present case cannot be doubted when it is noted that in the 1950 incident, appellant operated in the same area and in much the same manner as he was alleged to have done herein. On the earlier occasion he was observed coming out of Walton's Bar near Larkin and Geary. He had on his person several matchbook covers advertising that bar and on which bets were recorded. In the instant case appellant also was discovered in possession of matchbook covers from the same bar with bets similarly recorded thereon, and was again making his contacts in the same locale. Therefore such evidence clearly demonstrates a pattern or method of operation used by appellant, and explains the nature of his activities on July 30, 1953. ■ The evidence also is relevant to show that the possession of the bookmaking paraphernalia on the person of appellant most probably was not an innocent possession, and therefore tends to prove the element of intent. (*People* v. *Alexander,* 123 Cal.App.2d 918 [267 P.2d 883]; *People* v. *Burns,* 109 Cal.App.2d 524 [241 P.2d 308, 242 P.2d 9]; *People* v. *Coppla,* 100 Cal.App.2d 766 [224 P.2d 828].)

■ The evidence of appellant's actions a few weeks prior to his arrest was also relevant to prove the nature of appellant's operations. (*People* v. *Woods,* 35 Cal.2d 504, 511 [218 P.2d 981]; *People* v. *Grayson,* 83 Cal.App.2d 516, 520 [189 P.2d 285]; *People* v. *Hart,* 46 Cal.App.2d 230 [115 P.2d 546].)

■ The question of remoteness is also primarily to be determined by the trial court. In *People* v. *Peete,* 28 Cal.2d 306 [169 P.2d 924], evidence of a murder committed by defendant and for which she had been convicted was admitted to show design or scheme although it had been committed

more than 20 years prior to the crime for which she was then tried. And in *People* v. *Burns, supra,* evidence of a similar offense committed several years earlier was held to have been properly admitted. ■ Furthermore, remoteness affects only the weight, and not the admissibility of the evidence. (*People* v. *Zatzke,* 33 Cal.2d 480 [202 P.2d 1009].)

In *People* v. *Burns,* 109 Cal.App.2d 524 [241 P.2d 308, 242 P.2d 9], and *People* v. *Cassandras,* 83 Cal.App.2d 272, 279 [188 P.2d 546], the rule as to admission in evidence of other criminal acts is discussed at length. ■ It is well settled in this state that such evidence may be admitted to show a general system or plan used by a defendant and from which the inference can be drawn that he committed the offense charged, and that he also had a particular state of mind. ■ The cases note that when admitted such evidence must be restricted to other acts with a sufficiently high degree of common features to justify an inference that the defendant committed the offense for which he is then on trial.

Appellant discusses *People* v. *Grayson,* 83 Cal.App.2d 516 [189 P.2d 285], at some length and argues that it stands for the limited proposition that the commission of other crimes by defendant may be shown as part of the res gestae of defendant's arrest. The fact that in the cited case the evidence of other crimes was of crimes contemporaneous with the one for which defendant was being charged, does not in any way cast doubt upon the rule stated in *People* v. *Peete, supra,* and followed in *People* v. *Cassandras, supra,* and *People* v. *Burns, supra.*

■ It is claimed that prejudicial error was committed by the trial court in refusing to instruct at appellant's request that possession of paraphernalia used by bookies is insufficient to sustain a conviction. Appellant contends that no evidence other than inference deducible from possession of bookmaking paraphernalia indicates that appellant had laid, made, offered or accepted a horse racing wager, and cites *People* v. *Coppla,* 100 Cal.App.2d 766 [224 P.2d 828]. In the Coppla case, the defendant handed sealed envelopes to another person. In the sealed envelopes were found betting markers and owe sheets, but the court stated that there was no evidence that defendant knew what was contained in the envelopes, and the prosecution had put in evidence defendant's statement that he did not know the contents of the sealed envelopes. It was held that the prosecution was bound by that evidence in the absence of contrary proof. The

instant case is quite different. Appellant herein had records of bets upon his person which were not sealed, and which he attempted to destroy. He made no protestations of lack of knowledge of the contents of the papers. He asked the officer, who was well known to him, to give him a break.

The jury were instructed that "In every crime or public offense there must exist a union or joint operation of act and intent. To constitute such criminal intent, it is merely necessary that a person intend to do an act which, if committed, will constitute a crime." They were also instructed that "Every person who lays, makes, offers or accepts any bet or wager . . . is guilty of a crime." The jury was therefore adequately instructed on the necessity of finding intent to commit a criminal act.

Appellant maintains that since the evidence against him was in large part circumstantial, the failure of the trial court on its own motion to instruct in a manner similar to CALJIC 28, that each fact necessary to complete the chain of circumstantial evidence against defendant must be proven beyond a reasonable doubt, was prejudicial error. The jury were instructed, however, that "You are not permitted on circumstantial evidence alone to find the Defendant guilty of the crime charged against him, unless the proved circumstances not only are consistent with the hypothesis that the Defendant is guilty of the crime, but are irreconcilable with any other rational conclusion." In *People* v. *Candiotto* *(Cal.App.) 272 P.2d 63, cited by appellant, no instruction, such as that quoted above was given on circumstantial evidence. And even though it was held erroneous not to so instruct in that case, it was held not to constitute prejudicial error under the facts therein. *People* v. *Hatchett*, 63 Cal. App.2d 144 [146 P.2d 469], a manslaughter case, was reversed for several errors committed at the trial, one of them being failure to give an instruction on circumstantial evidence similar to the one which was given in this case. (And see *People* v. *Bender*, 27 Cal.2d 164 [163 P.2d 8].) And of course, if the evidence is not entirely or chiefly circumstantial, it is not error to fail to instruct on this type of evidence. (*People* v. *Ybarra*, 127 Cal.App.2d 74 [273 P.2d 284].) We feel that the instruction given in this case sufficiently informed the jury of the manner in which they were to consider the circumstantial evidence in the case.

*A rehearing was granted on July 9, 1954. The final opinion is reported in 128 C.A.2d 347 [275 P.2d 500].

■ Finally, it is urged that the evidence is insufficient to justify appellant's conviction of violation of subdivision 6 of section 337a, Penal Code, and that the evidence of the fact that he laid, made, offered or accepted a bet on horse races was merely conjecture. The evidence reviewed earlier herein points convincingly to the fact that appellant was in the business of accepting bets, and it is unnecessary to again review it in detail. Suffice it to say that records of bets were found on his person, he had a kind of improvised "office" at the rear of the tavern containing betting paraphernalia, the newspaper in the car at which he had contacted the two men, was opened at the racing page, he remained silent in the face of accusatory statements and asked the officer to give him a break, stating that he wouldn't be bothered with him again. The jury was clearly justified in concluding that appellant was guilty of a violation of section 337a, subdivision 6 of the Penal Code.

In view of the foregoing, the judgment finds ample support in the record before us and there being no prejudicial error it must be affirmed.

Judgment affirmed.

Nourse, P. J., and Dooling, J., concurred.