[Crim. No. 4378. Second Dist., Div. One. Dec. 28, 1949.]

THE PEOPLE, Respondent, v. HARRY E. BRADFORD, JR., Appellant.

Stahlman & Cooper, Grant B. Cooper and Percy V. Hammon for Appellant.

Fred N. Howser, Attorney General, and Kent C. Rogers, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the District Attorney of Los Angeles County defendant was accused in count one of a violation of subdivision 1 of section 337a of the Penal Code in that he did wilfully and unlawfully engage in pool-selling and bookmaking upon the result and purported result of horse racing. Count two charged a violation of subdivision 2 of the same code section which denounces as a crime the occupancy of any room . . . or other enclosure of any kind, with books, papers or paraphernalia for the purpose of recording or registering bets.

Following the entry of not guilty pleas to each count of the information the cause proceeded to trial before the court sitting without a jury, resulting in the conviction of defendant of the offense charged in count one and an acquittal of the crime charged in count two. Motion for a new trial was denied. This appeal is from the judgment and order denying defendant's motion for a new trial.

At the time fixed for the pronouncement of judgment, proceedings were suspended and defendant was placed on probation. Since no judgment was pronounced the attempted appeal therefrom must be dismissed and the cause decided upon the appeal from the order denying the motion for a new trial.

 The factual bankground which gave rise to this prosecution may be thus epitomized: On January 20, 1949, Joseph A. Smith, a police officer of the city of Los Angeles, observed defendant for more than an hour before the latter was arrested. The defendant was driving a 1940 Ford sedan. He was observed getting out of his vehicle and going into a market. When he emerged therefrom and was reentering his automobile he placed some long pieces of paper in his inside coat pocket. Following defendant "a little farther" Officer Smith observed him stop his automobile and enter a private residence. When defendant again entered his automobile and started away the officer continued to follow him for a short distance and arrested him. On the front seat beside defendant at the time of his arrest were nine Reporter Scratch Sheets and two Metropolitan Scratch Sheets, which were introduced into evidence as People's Exhibit A. Officer Smith opened the door on the driver's side of the vehicle, told the defendant that Smith and his partner were police officers, pulled back defendant's coat and removed from the inside coat pocket numerous lined papers. One of the papers had the word "Lady" in the lower lefthand corner. These papers were introduced in evidence as People's Exhibit B. In defendant's inside coat pocket and in the glove compartment of the automobile were more lined papers, one of which bore in the lower lefthand corner the inscription "Bill C." These papers were introduced in evidence as People's Exhibit C. At the time of his arrest, defendant had in his shirt pocket a small spiral notebook with writings on the pages thereof, one page of which contained the word "Mac" and the figures "29.00." This notebook was received in evidence as People's Exhibit D.

It was stipulated that Officer Smith was an expert on bookmaking as conducted in the county of Los Angeles.

In answer to a question, "Now, Officer, what papers, books, or paraphernalia are commonly used by bookmakers in Los Angeles County?" Officer Smith testified, "Scratch sheets, betting markers and they may either be on special pieces of papers, called the ABC Betting Markers or on plain pieces of paper, pencils, pens, radios, telephones, scratch sheets, form sheets, rundown sheets, owe sheets, and there are other things, too."

This same witness also testified that bets are commonly recorded in Los Angeles County ". . . by showing either the person's name, the name of the person either placing the bet either the agent or the person placing that bet I should say. In some cases the person who the bet is placed for, the date on which a particular bet is placed, the serial number or the name of a horse, the money, how it is placed on that particular horse, whether to win, place or show and the pay-offs in some cases on particular horses."

After Officer Smith had identified People's Exhibits B and C as "betting markers," the following transpired:

"Q. Now, Officer, would (you) interpret for the Court please, the following signs, symbols and figures as they appear on People's B for Identification? On the top sheet appears 6212620.

"A. Yes. We find first in the upper left-hand corner the figure 1600 and this is followed by the court's notation B for identification and over in the extreme right corner is the figure 19. The 1600 is in my opinion the number that the person uses when they call in. It is a means for identification instead of using their name they use the number. The 19 indicates that they are wagers on the 19th day of January of 1949. Down in the printed line 1 we find the serial number 621. There are two vacant columns and then the third column there is a 2 which is encircled. In the next column however we find the figure 620. By comparing People's B with A 621 in my opinion indicates a horse by the name of—just a minute, I am checking with the—a horse by the name of Curler running in the eighth race at Fairgrounds on the 19th day of January of 1949. The 2 encircled would commonly indicate that $2.00 was placed on that particular horse to show and it did win and by comparing B with A we find that the horse called Curler did win and paid 6.20 which accounts for the 6.20. Under this we find a blue line and the figure 2. In my opinion that is a 2 which is subtracted from the original 6.20.

Down on the bottom we find the name Lady which in my opinion is the agent who these particular people place their wagers through and we find the figure in red L4.20. In other words, the 2 subtracted from the 6.20 would leave the figure 4.20 which the bookmaker pays the party by the name of 1600 on that particular wager.

"Q. And would your answer be the same if I asked you your opinion as to all the other sheets of writings that appear on People's B for identification? A. Yes, at random,—I will check them at random.

"Q. Now, Officer, have you compared People's B for identification with People's A for identification? A. Yes, I have.

"Q. Was that spot check or was that a full complete check? A. That was a random check.

"Q. A spot check? A. Yes, sir.

"Q. What did your spot check reveal, Officer? A. They were all wagers on horses running on the 19th day of January, 1949.

"Q. What type of a betting marker is People's B, Officer? A. This is commonly referred to as the professional type or the ABC type.

"Q. And the same holds true for People's C for identification? A. Yes, that is true."

The witness then testified that People's Exhibit C represented bets for days previous to January 19, 1949, and that People's Exhibit D, a notebook, especially the sheet with the word "Mac" on top, was a "bookmaker's owe sheet. It shows the amounts of money that he is either supposed to collect or pay to different customers," and that the names thereon, in the opinion of the witness, referred to "customers."

Over the objection of defendant, "upon the ground there has been no proof of the corpus delicti of either of the offenses charged in the information," Officer Smith was permitted to testify to a conversation he had with defendant as follows:

"He said, 'I have been arrested before for bookmaking over in Burbank.' He said, 'I just started making the collections for this bookmaker. I have only been doing it for a short while.' And we had further conversations about impounding his automobile at the time of the arrest which he said, 'Well, leave it on Lankershim Boulevard and I will pick it up later.' That is roughly the substance of the conversation."

Defendant himself did not take the witness stand nor did he offer any evidence in his behalf.

As a first ground of appeal it is earnestly urged by appellant that "the first subdivision of Section 337a of the Penal Code of California providing 'Every person who engages in pool-selling or bookmaking, with or without writing, at any time or place,' by virtue of which this appellant suffered a conviction, is unconstitutional and void."

The Penal Code provision in question reads as follows: "Every person, 1. Who engages in pool-selling or bookmaking, with or without writing, at any time or place . . .

"Is punishable by imprisonment . . ."

Appellant's attack upon the constitutionality of the quoted section is grounded first, on the claim that it is violative of the Fourteenth Amendment of the Constitution of the United States which prohibits the abridgment by any state of the privileges or immunities of citizens of the United States, or the deprivation of life, liberty or property of any person without due process of law, or the denial to any person of the equal protection of the laws. Second, that the code provision is in conflict with the declaration of rights set forth in section 1 of article I of the Constitution of the State of California. Third, that the code provision is also in conflict with the guarantee set forth in the declaration of rights contained in section 13 of article I of the California state Constitution.

Appellant urges that in order to comply with the constitutional requirement of due process the crime must be clearly defined to the end that "all may know in what act or omission the violation of the law consists . . ." and "that a person of ordinary understanding may know therefrom when he is violating its provisions."

■ It requires no citation of authority in support of the proposition that when a statute is so vague and uncertain that a person of ordinary intelligence cannot understand its meaning, it may not be upheld as a valid statute. ■ However, we are persuaded that the subdivision of the code section here under attack cannot be strictured as one, the provisions of which are so vague, uncertain, and ambiguous as to render it unconstitutional on that account.

We are satisfied that the terms "pool-selling" and "bookmaking" are so well understood that no person of ordinary intelligence can misunderstand the import and meaning of the terms and the scope of the acts prohibited by the penal statute into which they have been incorporated. It would appear that these terms are of general use and that they have a well-accepted and recognized meaning throughout many jurisdic-

tions, and especially among those dealing with the prohibition and regulation of betting on horse races or other contests of skill.

So far as here pertinent, section 7 of the Penal Code provides:

"The following words have in this code the signification attached to them in this section, unless otherwise apparent from the context:

. . . . . . . . . . . . . .

"16. Words and phrases must be construed according to the context and the approved usage of the language; . . ."

Section 4 of the Penal Code provides:

"The rule of the common law, that penal statutes are to be strictly construed, has no application to this code. All its provisions are to be construed according to the fair import of their terms, with a view to effect its objects and to promote justice."

▇ While Webster's New International Dictionary, Second Edition Unabridged, published in 1948, defines the word "bookmaker" as "One who makes books; . . . formerly, a printer and binder; now . . . one skilled in printing and making up the format of books. . . . A compiler of books from other books," it also defines the term, "One who makes a book of bets," and it defines "bookmaking" as "the making of a book of bets."

Count one of the information in the instant case charges that the appellant did "unlawfully and feloniously engage in . . . bookmaking upon the result and purported result" of a horse race.

Having in mind judicial precedent wherein the courts have held that such terms as "banking game" and "poker," although not defined in the statute, may be said to be "commonly known and understood" and thus invulnerable to the charge of vagueness, indefiniteness, and uncertainty, we are convinced that the term "bookmaking" here under consideration and as used in the statute must be held to clearly mean the making of a betting book. ▇ That although not defined in the statute the terms "pool-selling" and "book-making" are commonly known and understood, and not therefore subject to the stigma of indefiniteness claimed by appellant. To hold otherwise would require the courts to shut their eyes and ears to the everyday happenings of contemporary life. This they cannot and will not do.

The foregoing views are supported by the cases of *People*

v. *Carroll,* 80 Cal. 153, 155 [22 P. 129]; *In re Lawrence,* 55 Cal.App.2d 491, 496, 497 [131 P.2d 27]; *Matter of Roberts,* 157 Cal. 472, 478 [108 P. 315] (concurring opinion by Henshaw, J.); *People* v. *Corbalis,* 86 App.Div. 531 [83 N.Y.S. 782, 784], 178 N.Y. 516 [71 N.E. 106]; *State* v. *Morano,* 133 N.J.L. 428 [44 A.2d 786, 787]; *State* v. *Carr,* 6 Ore. 133, 135.

We shall next give consideration to appellant's contention that "the court erred in receiving in evidence previous to the establishment of the corpus delicti a purported admission of appellant allegedly made to the arresting officer."

 It is now established law in this state that proof of the corpus delicti by evidence of the conclusive and convincing character required to support a conviction of the offense charged is not a prerequisite to the reception in evidence of the extrajudicial statements of the accused. Prima facie proof is all that is necessary and the corpus delicti may be proved by circumstances shown in evidence or by inferences drawn from facts established. Direct or positive evidence is not essential, nor is it necessary that evidence in proof of the corpus delicti connect the accused with the commission of the crime charged. (*People* v. *Hudson,* 139 Cal.App. 543, 544 [34 P.2d 741]; *People* v. *McMonigle,* 29 Cal.2d 730, 738 [177 P.2d 745]; *People* v. *Harris,* 40 Cal.App.2d 129, 131 [104 P.2d 529]; *People* v. *Mason,* 37 Cal.App.2d 407, 409 [99 P.2d 567]; *People* v. *Vicunia,* 105 Cal.App. 145, 147 [286 P. 1061]; *People* v. *Wilde,* 82 Cal.App.2d 879, 880, 881 [187 P.2d 825].)

 Disregarding the extrajudicial statements of appellant, the evidence hereinbefore narrated shows that at the time of his arrest he was in possession of all the paraphernalia and equipment necessary to perpetrate the crime of bookmaking as denounced by subdivision 1 of section 337a of the Penal Code. He had in his possession all of the paraphernalia commonly used by bookmakers in plying their trade. He was possessed of scratch sheets, owe sheets, and betting markers, the presence of which constitutes the major element of the crime charged. From these facts, exclusive of the admissions of appellant, logical and proper inferences could be drawn (Code Civ. Proc., §§ 1958, 1960) that such paraphernalia was being used for bookmaking purposes, thus establishing the corpus delicti.

 While it is true as argued by appellant, that when he made appropriate and timely objection to the introduction of testimony concerning his admissions allegedly made at the

time of his arrest, the trial court disposed of the objection with the statement, "I think it (the objection) is good as to Count I but not as to Count II," and later found appellant guilty under count one, we are convinced that irrespective of appellant's admissions the evidence, aside from the extrajudicial statements, was sufficient to establish the corpus delicti as to count one, and was sufficient to warrant the introduction into evidence as to said count the admissions of appellant. Therefore, he suffered no prejudice. In view of the action of the court in finding defendant guilty as to count one and not guilty as to count two the assumption is reasonable that the statement of the court as to the sufficiency of the evidence as to count one was inadvertent.

Appellant's final contention that the evidence is insufficient to support the decision of the court finding him guilty of the offense charged in count one cannot be sustained.

While an appellate tribunal is entitled to consider the evidence it cannot weigh it. The sole function of an appellate court is to determine whether on the face of the evidence it can be held that sufficient facts could have been found by the trier of facts to warrant an inference of guilt. Unless it clearly appears that upon no hypothesis whatever is there substantial evidence to support the conclusion reached in the court below, the verdict of a jury or the decision of the trial judge will not be set aside on the ground of insufficiency of the evidence to sustain it. If the circumstances reasonably support the verdict or decision rendered, the opinion of the appellate court that those circumstances might also reasonably be reconciled with the innocence of the accused, will not justify the latter court in interfering with the determination of the trial court (*People* v. *Newland*, 15 Cal.2d 678, 681 [104 P.2d 778]).

It is unnecessary to here again set forth the evidence in the instant case. Suffice it to say that assuming in favor of the conclusion arrived at by the trial judge the existence of every fact which he could have reasonably deduced from the evidence, which included incriminatory admissions by the appellant, it must be held that the circumstances shown reasonably justify his decision in finding the appellant guilty of the offense charged in count one of the information.

The attempted appeal from the judgment is dismissed. For the foregoing reasons the order denying defendant's motion for a new trial is affirmed.

Doran, J., and Drapeau, J., concurred.