[Crim. No. 4707.   Second Dist., Div. One.   Feb. 18, 1952.]

THE   PEOPLE,   Respondent,   v.   HARRY   C.   MEADE,
Appellant.

Joseph T. Forno for Appellant.

Edmund G. Brown, Attorney General, and William E. Fitzpatrick, Deputy Attorney General, for Respondent.

DRAPEAU, J.—Defendant was charged in two counts with violations of subdivisions 1 and 6 of section 337a of the Penal Code, to wit: pool selling and bookmaking; and making, offering and accepting bets on horse races, respectively.

Upon arraignment defendant's motion to set aside the information under section 995 of the Penal Code was denied; he entered his plea of not guilty, waived a jury trial and the cause was submitted on the transcript taken at the preliminary hearing. The court found defendant not guilty on count II and guilty as to count I, and denied his motion for a new trial.

Thereafter judgment and sentence were pronounced. Execution of the sentence was suspended and defendant was granted probation for a term of two years on condition that he pay a fine of $200 and follow the directions of the probation department.

This appeal is taken from the judgment of conviction, the verdict, the sentence and the order denying defendant's motion for a new trial. ■■ Since there is no appeal from a verdict or a sentence (*People* v. *D'Elia,* 73 Cal.App.2d 764, 766 [167 P.2d 253]; *People* v. *Clark,* 106 Cal.App.2d 271, 273 [235 P.2d 56]), those appeals must be dismissed.

Two points are made upon this appeal, to wit:

1. The evidence is insufficient to justify the conviction;

2. Where the facts tended to show a violation of one subdivision of section 337a, and appellant was acquitted on that count, those same facts cannot be used as a basis for finding appellant guilty of violating another subdivision of the same section.

The only witness produced at the trial was Police Officer Paul C. Ward. It was stipulated that he was an expert in all phases of bookmaking as conducted in Los Angeles County. And, in answer to the question, "Officer, what books, papers and paraphernalia are commonly used by bookmakers in this county?" he testified, "Pencils and papers, scratch sheets, racing forms, daily newspapers, California Digests, telephones, sometimes adding machines, clocks."

Officer Ward further testified that he arrested appellant at 3:55 p. m. of February 27, 1951, at a cocktail lounge located

in the city of Los Angeles; that he observed appellant for a few minutes before placing him under arrest. Witness was standing in the bar when appellant entered and went to the rear of the room where he appeared to be making change at the cash register; that holding in his hand "a small piece of paper that was a portion of a scratch sheet for that date," appellant had a conversation with a woman customer; that the officer heard the lady mention the name General K. After that there was some discussion about money. "I heard the defendant say, 'You owe me,' but I couldn't hear the rest of it. The defendant then came to the end of the bar where I was standing and called out, 'Does anyone else want to get in in the sixth?' He then turned to the telephone and dialed a number. He talked in the phone for a short while, facing the wall, then he turned his face slightly towards my direction and I overheard him say, 'Give me 544, one to win and one to place.' He also said, 'Give me 552, five to win.' He then turned his face back the other way and I couldn't hear any more of the conversation. Immediately after he hung up the telephone I placed him under arrest." The piece of scratch sheet found in appellant's possession was introduced in evidence. With respect to this exhibit, Officer Ward testified that the printed matter on the face thereof "represents the various horses running in the 5th, 6th, 7th and 8th races at Santa Anita on the day of the arrest. It also gives their post position with the handicap and jockeys. There are also two very small index numbers labeled beside the 6th, the beginning of the 6th and the 8th race on the sheet. . . . They are written in pencil. . . . Index numbers are commonly used in a phone spot instead of the name of the horse for recording the bets that are called in. These numbers aren't always consistent but they are fairly so."

Interpreting the conversation which he overheard, it was his opinion that "the 554 would represent a horse and the one to win and one to place would be $1.00 to win and $1.00 to place on that horse. . . . 552 would be the name of a horse, and five to win would be the amount wagered on it." Also, that a bet called in for that day would be on a horse running on that date. That he checked the exhibit with the racing section of a daily newspaper for the date in question, from which he determined that "the number 554 would stand for the horse Pater in the 8th race on that day. . . . the 552 mentioned would, in my opinion, be the horse Yondetega also running in the 8th race at Santa Anita" on the same date;

he also ascertained that "General K was running in the 6th race at Santa Anita on . . . the 27th day of February," the day of the arrest.

In connection with his first point, appellant argues that there was no evidence that he was engaged in pool selling or bookmaking at the time of his arrest, or that he received a bet or purported bet on a horse race.

Bookmaking is defined in *People* v. *Bradford*, 95 Cal.App.2d 372, 378 [213 P.2d 37], as "the making of a book of bets."

The testimony hereinabove narrated discloses that at the time of his arrest, appellant was in possession of betting paraphernalia, to wit: a piece of scratch sheet, containing pencilled notations respecting various horses running in races at Santa Anita on the day in question. Moreover, his telephone conversations in the presence of the witness Ward were directly related to these notations.

All of the evidence tended to connect appellant with the crime of which he was convicted and fully meets the evidentiary requirements for sustaining a conviction of violating section 337a of the Penal Code, as was announced in *People* v. *Newland*, 15 Cal.2d 678 [104 P.2d 778]. That rule was stated in *People* v. *Bradford, supra,* 95 Cal.App.2d 372, 380, as follows:

"While an appellate tribunal is entitled to consider the evidence it cannot weigh it. The sole function of an appellate court is to determine whether on the face of the evidence it can be held that sufficient facts could have been found by the trier of facts to warrant an inference of guilt. Unless it clearly appears that upon no hypothesis whatever is there substantial evidence to support the conclusion reached in the court below, the verdict of a jury or the decision of the trial judge will not be set aside on the ground of insufficiency of the evidence to sustain it. If the circumstances reasonably support the verdict or decision rendered, the opinion of the appellate court that those circumstances might also reasonably be reconciled with the innocence of the accused, will not justify the latter court in interfering with the determination of the trial court (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778].)"

It is also urged that since appellant was acquitted of a violation of subdivision 6 of section 337a, *supra,* that the facts relating to acts condemned by that subdivision cannot be used to convict appellant of a violation of subdivision 1.

There is no merit in this point. In *People* v. *Ghio*, 82 Cal. App. 28, 32 [255 P. 205], this court in construing said section stated:

"Section 337a of the Penal Code contains six subdivisions and is so framed that one set or series of acts might constitute a violation of each or all of said subdivisions."

Also in 6 California Jurisprudence, 10-Year Supplement (1950 Rev.) 213, section 8, it is said: "The statute was intended to prevent bookmaking, pool selling, and bets connected therewith in any way, and it is immaterial whether the race is actually run, or that the defendant acts gratuitously or without a financial interest in the bet or in but a single transaction."

The appeals from the verdict and sentence are dismissed. The judgment and the order denying motion for new trial are, and each of them is, affirmed.

White, P. J., and Doran, J., concurred.