[Crim. No. 5794. Second Dist., Div. One. June 12, 1957.]

THE PEOPLE, Respondent, v. THERESA RACE,
Appellant.

Forno & Umann and Burton Marks for Appellant.

Edmund G. Brown, Attorney General, and Morris Schachter, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County containing three counts, defendant was accused of violations of section 337a of the Penal Code. Count I alleged a violation of subdivision 1 in that defendant did unlawfully engage in bookmaking upon the result and purported result of a horse race. Count II charged a violation of subdivision 2 in that the defendant kept and occupied a residence, with books, papers, paraphernalia, etc., for the purpose of recording and registering bets on horse-races. In Count III defendant was charged with the violation of subdivision 6 in that she unlawfully accepted bets upon the result of certain horse races.

Defendant pleaded not guilty, a trial by jury was waived and by stipulation the case was submitted to the court ". . . upon the testimony taken at the preliminary hearing, as it is reflected in the transcript of that proceeding. That the exhibits received in evidence there may be deemed in evidence here. That any stipulations entered into at the preliminary hearing may be deemed re-entered into for this proceeding. And either side reserves the right to present any additional testimony so desired, and any additional objections." A motion to suppress the evidence was denied and defendant neither testified nor offered any evidence in her behalf. She was adjudged guilty on each count of the information. Proceedings were suspended and defendant granted conditional probation. From the judgment and the order denying her motion for a new trial defendant prosecutes this appeal. Since the record does not disclose that a motion for a new trial was made, the attempted appeal therefrom must be dismissed.

The following will serve as a fair epitome of the factual background of this prosecution. On the morning of March 1, 1956, Officer Walters of the Los Angeles Police Department received information from an informant that a "relay spot" was being conducted over the telephone, number NOrmandie 2-8350. The officer "checked out" the number through the telephone company and he and two other officers went to 1536 North Occidental, Los Angeles, arriving there at approximately 2 p. m. They "staked out" the single-story residence there located and kept it under observation. At 2:15 p. m. Officer Walters phoned the number given him by the informant and a female voice answered the telephone. Officer Walters asked, "Who won the second?" She stated, "Keekita. Who is this?" Officer Walters replied, "Carl," and she stated, "I should ask, you know." Officer Walters

replied, "O.K. Carl for Bob. In the third Double F. Kay, five to win, and in the fourth Spanish Sherry, ten to win." She repeated the names and the amounts and asked "Is that all?" Officer Walters answered "Yes," and hung up. Double F. Kay was listed to run in the third race and Spanish Sherry in the fourth race at Santa Anita that day. After the phone call Officers Walters and Deire went to the front door of the house and Officer McCartney went to the rear of the premises. Officer Walters knocked on the door and stated, "Police officers. You are under arrest for bookmaking. Open the door." After receiving no response he repeated the same and then told Officer McCartney to force entry through the rear door. Officer McCartney complied. The front door was opened and Officer Walters then entered. The latter observed defendant in a rear room in which there was a white porcelain table; a telephone (NOrmandie 2-8350); some pencils; a can of cleansing powder; two sponges, one of which was wet; and a scratch sheet which had been cut up. The white porcelain table (People's Exhibit No. 1) had writing on it. In the upper right-hand corner was the name "Pauley" followed by the name "Bob" and approximately 6 inches under that were the numerals "3" and "4." In the opinion of Officer Walters "Pauley" would identify the better and "Bob" would indicate the agent that he was coming in for and the "3" and "4" were the handicap numbers of the winning horses in a race which had been run at 1:56 that day. When Officer Walters first saw the table it was partially wet and had swirls on it. The cut up scratch sheet was found in a closet in the same rear room. While Officer Walters was there the telephone rang approximately 30 times. He answered the phone and the other parties, both male and female, would ask for different people and then hang up. Most of them would hang up without saying anything. After the arrest, Officer Walters heard the defendant speak and because of her "Bostonian accent" he recognized her voice as that of the woman who had accepted his purported wager over the telephone prior to the arrest. When the officers arrested the defendant, Mrs. Mildred Packwood, a woman about 70 years old, was in the front room of the house. Officer Walters asked Mrs. Packwood how long defendant had been using her phone to make book. The defendant answered, "She doesn't know anything about it. I told her I was soliciting for an insurance company." Defendant further stated that she didn't work for an insurance company and that

she had "just told this to Mrs. Packwood." She said that a man named Sam had hired her; that she didn't know how much she was to be paid for she hadn't been paid yet; and that she had met Sam in a bar. Officer Walters then told the defendant that nobody else knew she was arrested and asked her to work with the officers to catch the man "who is running this book." To which the defendant replied, "Don't try and con me. I wouldn't do that."

Cheryl F. Miller, a clerk-typist at Administrative Vice, in the police department, was summoned to 1536 North Occidental Boulevard on the same date. She arrived at about 2:50 p. m. and went inside to the rear room and answered the telephone approximately 15 or 20 times. One time when she answered the phone she said, "Hello" and a man said, "Hello." This is Daniel for Bob. Your voice doesn't sound right. Is everything O.K.?" Miss Miller answered, "Yes," and the other party hung up. She then took some more calls and the same party called again and said that it was Daniel for Bob again, that he was worried and he called the boys to see if everything was all right; that it was and he then said "Here's my bet. In the fifth, Buggles, two to win." Miss Miller made notations of the conversations which included:

At 3:05 p. m. a man called, "Tex for 99, in the sixth, Island Queen, two and two. In the eighth, Leona Welch, two and two, a one and one parlay."

At 3:05 p. m., "Curly for Bob. In the fifth, Tall Talk. In the sixth Nooran, four to win. In the seventh, Barely Nothing, two to win, a round robin."

At 3:05 p. m., a woman called, "Barbara. In the fifth, Buggles, two across. In the fifth, Him Said, two to place and two to show. In the sixth, Nooran, two across."

At 3:05 p. m., a female called. At 3:09 p. m. a man called. The conversations on these calls and on all the calls Miss Miller received were similar to those above set out.

It was stipulated that Officer Walters was an expert in bookmaking and he testified concerning the various types of bookmaking operations in Los Angeles County, which include relay spots. He testified that a "relay spot" is a place where a person is at a telephone and the betters have this telephone number. They call this telephone number when they wish to place a wager and leave their identification, the name of the horse and the amount they want wagered on the horse and how they want it wagered. The clerk at the relay spot makes a temporary notation of the wager and

the write-in, where the permanent recordations are kept, calls the relay spot periodically and receives the wagers which the relay spot has taken. The clerk at the relay spot then erases the temporary notations that have been made. The clerk at the relay spot makes these temporary notations on anything which can be written on and easily erased.

In the opinion of Officer Walter the operation going on at this address was a relay spot, wherein the person at the telephone would write on the white table and when the permanent recorder called in she would give him the information and then erase what was on the table. That this was the reason for the scouring powder and the wet sponge.

As her sole ground for a reversal of the judgment appellant contends that the evidence is insufficient to sustain a finding of guilt on any of the three counts of the information.

## Count I

Appellant urges that the only evidence to sustain the conviction on this count is "Semi-incriminatory statements by defendant admitted in the absence of a corpus delicti." This count involved the charge of bookmaking as set forth in subdivision 1 of Penal Code, section 337a.

 With reference to establishing the corpus delicti, this court stated in *People* v. *Bradford,* 95 Cal.App.2d 372, 379 [213 P.2d 37] : "It is now established law in this state that proof of the corpus delicti by evidence of the conclusive and convincing character required to support a conviction of the offense charged is not a prerequisite to the reception in evidence of the extrajudicial statements of the accused. Prima facie proof is all that is necessary and the corpus delicti may be proved by circumstances shown in evidence or by inferences drawn from facts established. Direct or positive evidence is not essential, nor is it necessary that evidence in proof of the corpus delicti connect the accused with the commission of the crime charged. (Citing cases.)"

To us a mere recital of the evidence hereinbefore narrated is a refutation of appellant's claim that there was insufficient evidence to support the finding on Count I. There is here present the telephone conversation in which Officer Walters purported to place a bet on two horses running that day, and which proffered bet was accepted by appellant. Though it be assumed that such evidence was admitted not to prove the truth of the conversation, it was admissible to prove that the telephone was placed in the residence for the

purpose of taking bets (*People* v. *Joffe*, 45 Cal.App.2d 233, 235 [113 P.2d 901]; *People* v. *Kalmes*, 100 Cal.App.2d 795, 796 [224 P.2d 408].) ▓▓ Appellant challenges the sufficiency of the officer's identification of her by her "unusual" voice and asserts that "None of the callers to the female employee seemed to notice a difference." This attack goes to the weight of the evidence which is addressed solely to the trier of fact. There is, however, evidence, corroborative of Officer Walters' testimony. Miss Cheryl F. Miller, the police department employee, testified that when she answered one of the telephone calls, the caller said, "Your voice doesn't sound right. Is everything O.K.?" When Miss Miller answered "Yes," the caller "hung up." In addition to the foregoing, we have the cut-up scratch sheet in the closet, and the white porcelain table with the writing on it. ▓▓ Officer Walters gave as his expert opinion that this writing indicated the names of the betters and the agents that they were coming in for and the handicap numbers of the horses in races which had been run on that day. As a conceded expert, the officer was qualified to testify as to the significance of the markings (*People* v. *Klein*, 71 Cal.App.2d 588, 591 [163 P.2d 71]; *People* v. *Brown*, 123 Cal.App.2d 361, 364 [266 P.2d 805]). The same officer was qualified to testify as to the customary methods and equipment of the places engaged in bookmaking. (*People* v. *Klein*, *supra*.) He described the general method of operations of relay spots where temporary notations are made. He testified without objection by the appellant, that in his opinion this was a "relay spot" wherein the person on the telephone would write on the table and use the scouring powder and sponges to erase these notations. As an expert he was also qualified to identify these exhibits as paraphernalia used for recording or registering bets. (*People* v. *Klein*, *supra*, p. 590.)

Then there is the testimony of Officer Walters that while he was in the house the telephone rang approximately 30 times and that when he answered it most of the other parties would hang up without saying anything. Miss Miller, the clerk from the police department, answered the telephone approximately 15 or 20 times and made notations of the conversations. She answered six calls within a period of nine minutes and the conversations were all similar to the one set forth in the aforesaid narrative of her testimony.

Appellant urges that testimony of the phone calls has no probative value "if not explained and their import is a

mystery.'' With this contention we cannot agree. ■ As was said by this court in *People* v. *Overman*, 149 Cal.App.2d 125, 131-132 [307 P.2d 1000] : ''It does not appear to us that any explanation of the purport of the telephone talks was required. Almost anyone of adult years, who is even casually acquainted in what goes on in the so-called 'sport of kings' at the various race tracks in Southern California and elsewhere would understand what was meant by what was said in the various telephone conversations. With all of the divers advertisements in the various mediums concerning the horse races at the several race tracks, the repeated radio announcements of the results and televising of the different races at least once each week, and with all of the propaganda about how many millions of dollars are given to charity by the race track owners, and all of the news stories of the frailties of the human beings who engage in embezzling money to 'play the horses,' it would be difficult to avoid coming into contact with, and having an understanding of the incidence of the race tracks and what the words meant. As was said in *People* v. *Larum*, 111 Cal.App.2d 732, at page 734 [245 P.2d 323] : 'The conversations and the passing of the money would be commonly understood as wagers on horse racing, and in the absence of any explanation by defendant that the transactions had a different meaning or purpose, the court could scarcely have failed to find they were wagers. The evidence was sufficient. . . .' '' (See also *People* v. *Powell*, 1 Cal. App.2d 222, 224 [36 P.2d 201] ; *People* v. *Thompson*, 119 Cal.App. 310, 311 [6 P.2d 301].) One of the conversations indicates clearly that the words exchanged between Officer Walters and appellant involved a purported wager. This was the conversation between Miss Miller and a man who called on the telephone after the same individual had previously questioned Miss Miller's voice, and upon the second occasion said, ''. . . he was worried and he had called the boys to see if everything was O.K., and it was,'' whereupon he said, ''Here's my bet. In the fifth, Buggles, two to win.'' These conversations tended strongly to prove that the premises were occupied for the purpose of recording wagers on horse races. (*People* v. *Joffe, supra*, p. 235; *People* v. *Reifenstuhl*, 37 Cal.App.2d 402, 405 [99 P.2d 564].)

■ From the foregoing we are satisfied that the *corpus delicti* of the offense of bookmaking was clearly established and that the incriminatory statements made by appellant were admissible. We shall not here again narrate the admissions

made by appellant to Officer Walters. Suffice it to say that we find it difficult if not impossible to conceive how any inference of innocent activity on the part of appellant can be drawn from the facts and circumstances presented by the evidentiary features of this case (*People* v. *Allen,* 113 Cal. App.2d 593, 596 [248 P.2d 474].)

In the instant case appellant did not testify in her own behalf, and in this connection, as stated in *People* v. *Adamson,* 27 Cal.2d 478, 490, 491 [165 P.2d 3] : ". . . if it appears from the evidence that defendant could reasonably be expected to explain or deny evidence presented against him, the jury may consider his failure to do so as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." (See also *People* v. *Smith,* 113 Cal.App.2d 416, 419 [248 P.2d 444].)

## Count II

In this count appellant was accused of a violation of subdivision 2, Penal Code, section 337a, in that she unlawfully occupied a residence with books, papers, paraphernalia, etc., for the purpose of recording and registering bets on horse races. She asserts that the only evidence to sustain the conviction on this count is "a porcelain table with vague writings on it, Ajax scouring powder, and sponges. The same objects to be found in any home in the land." The offense charged in this count is complete when it is shown that the accused occupied an enclosure with papers, etc., for the purpose of recording a bet or bets on the result or purported result of any horse race or purported horse race. The character of the paraphernalia found on the premises, established by the testimony of Officer Walters, without objection, as hereinbefore noted, coupled with his testimony as to the use to which the same could be, and in the instant case actually was being put, and the presence of appellant on the premises in question, all point unerringly to the conclusion that she had the paraphernalia in her possession and was occupying the premises for the unlawful purpose denounced by the foregoing Penal Code section. It is not the actual making of bets, but the occupancy of premises with paraphernalia for the purpose of recording such bets which constitutes the offense defined in subdivision 2 of Penal Code, section 337a. In the light of the evidence herein narrated, it would tax one's credulity and do violence to reason to conclude other than that every element of the offense charged was sufficiently

established. And when there is added to the foregoing, appellant's admissions, her guilt is practically demonstrated (*People* v. *Manning*, 37 Cal.App.2d 41, 43 [98 P.2d 748]; *People* v. *Watkins*, 126 Cal.App.2d 199, 203 [271 P.2d 641]; *People* v. *Battaglia*, 107 Cal.App.2d 476, 479 [237 P.2d 70]; *People* v. *Lewis*, 91 Cal.App.2d 346, 349 [204 P.2d 919]).

In the instant case appellant did not testify nor did she offer any evidence in her own behalf. In that regard this case is similar to *People* v. *Smith, supra,* page 419, wherein the court said: ". . . [T]he defendant failed to avail himself of an opportunity to explain or deny a number of incriminating circumstances about which he could reasonably be expected to know. The court was entitled to consider his failure to do this 'as tending to indicate the truth of such evidence and as indicating that among the inferences that may be drawn therefrom, those unfavorable to the defendant are the more probable.' . . ."

## COUNT III

Finally, appellant challenges the sufficiency of the evidence to sustain her conviction on Count III wherein she was charged with the violation of subdivision 6 of Penal Code, section 337a, in that she accepted a bet upon a horse race. The contention is untenable. We shall not here repeat the evidence above narrated other than to say that the offense was proven by the heretofore mentioned conversation between Officer Walters and appellant, wherein the officer said, "O.K. Carl for Bob. In the third Double F. Kay, five to win, and in the fourth Spanish Sherry, ten to win." The appellant repeated the names and the amounts and asked, "Is that all?" Officer Walters replied, "Yes," and hung up. Double F. Kay and Spanish Sherry were horses listed to run at Santa Anita that day. Appellant urges that the hearsay rule excludes extrajudicial statements when offered "as assertions to evidence the truth of the matter asserted." This contention is answered by the case of *People* v. *Henry*, 86 Cal.App.2d 785, 789 [195 P.2d 478], as follows: ". . . There is a well-established exception or departure from the hearsay rule applying to cases in which the very fact in controversy is whether certain things were said or done and not as to whether these things were true or false, and in these cases the words or acts were admissible not as hearsay, but as original evidence. . . ." (See also *People* v. *Kahn*, 27 Cal.App. 2d 645, 646 [81 P.2d 632]; *People* v. *Burch*, 118 Cal.App.2d

122, 123, 125 [257 P.2d 44] ; *People* v. *Chaney,* 147 Cal.App. 2d 740, 741-742 [305 P.2d 955]).

The judgment is affirmed. The attempted appeal from a nonexistent order denying defendant's motion for a new trial is dismissed.

Doran, J., and Fourt, J., concurred.