[Crim. No. 6026.   Second Dist., Div. One.   Feb. 11, 1958.]

THE PEOPLE, Respondent, v. MAX RUBIN, Appellant.

*Assigned by Chairman of Judicial Council.

Nichols & O'Neill and Dan O'Neill for Appellant.

Edmund G. Brown, Attorney General, and Norman H. Sokolow, Deputy Attorney General, for Respondent.

HERNDON, J. pro tem.*—In an information of two counts, defendant was charged with violations of subdivisions 1 and 6 of section 337a of the Penal Code, to wit, of bookmaking and accepting a bet on a horse race, respectively. The defendant entered a plea of not guilty. A jury trial was waived and it was stipulated that the cause be submitted on the transcript of the preliminary hearing. Defendant was found guilty on both counts as charged. His motion for a new trial was denied. He has appealed from the judgment and from the order denying his motion for a new trial.

Appellant urges two contentions on this appeal: (1) that the evidence was insufficient to sustain the judgment, and (2)

*Assigned by Chairman of Judicial Council.

that so far as the present case is concerned, section 337a of the Penal Code was superseded by section 19662 of the Business and Professions Code and that, as a consequence, the trial court "had no jurisdiction over the cause." In view of the foregoing contentions it is necessary to summarize the evidence.

Officer May, attached to the Administrative Vice Division of the Los Angeles Police Department, was on duty on Friday, February 22, 1957, at approximately 4 p. m. He was in plain clothes. At about that time Officer May entered a place known as "Jack's Bar" located at 115 West Sixth Street. As he proceeded toward the rear of the barroom the officer saw appellant talking to someone at a table. The officer observed that appellant had in his hand what appeared to be a scratch sheet. The officer entered a restroom and on emerging therefrom observed a male customer who was seated at the bar, signal to appellant. As appellant approached the customer the officer followed and took a seat immediately to the left of the customer. The officer overheard the customer say to the appellant, "Give me 2 and 2 on Master Boing in the seventh." At this time appellant made some sort of notation on what appeared to be a scratch sheet, said, "Okay" and left the bar. This was at about 4:10 p. m. Officer May finished his drink, got up, and went to the car in which his associates, Officers Walters and Burks, were seated. This car was parked on Main Street just around the corner from Sixth Street. Officer May informed his associates of what had transpired.

Officer Walters, a stipulated expert in the manner in which bookmaking is conducted in Los Angeles County, entered Jack's Bar at about 4:20 p. m. He looked for appellant but appellant was not in the bar at the time. On turning to leave, Officer Walters observed appellant approaching the entrance to the bar. Officer Walters identified himself as a police officer and placed appellant under arrest for violating Penal Code, section 337a. The officer searched appellant. At the trial, in response to the question, "And did you find anything which might indicate that the defendant was bookmaking?" Officer Walters answered, "I found a National Daily Reporter's scratch sheet on the defendant."

Officer Walters examined the scratch sheet and found it contained information indicating that a horse named "Master Boing" was listed to run in the seventh race at Santa Anita and the probable post time for that race was shown as 4:40 p. m. of the same day. The scratch sheet also revealed checks

or dots opposite a horse by the name of "St. Vincent" listed to run in the seventh race, and opposite the horse named "Master Boing" also listed to run in the seventh. Appellant did not testify nor did he offer any evidence in his own behalf.

It is our conclusion that the evidence, as above summarized, is clearly sufficient to sustain the conviction. ▉ An appellate tribunal may not weigh the evidence. Our sole function is to determine whether or not there was substantial evidence from which the trier of the facts reasonably could draw the necessary inferences and find the facts constituting the essential elements of the offense charged. (*People* v. *Newland,* 15 Cal.2d 678 [104 P.2d 778] ; *People* v. *Bradford,* 95 Cal.App.2d 372, 380 [213 P.2d 37] ; *People* v. *Meade,* 109 Cal. App.2d 306, 309 [240 P.2d 680].)

The following reference to earlier decisions contained in the recent decision of *People* v. *Jackson,* 152 Cal.App.2d 397 [313 P.2d 931], indicates the sufficiency of the evidence in the case at bar: "In *People* v. *Burch,* 118 Cal.App.2d 122 [257 P.2d 44], a woman said to defendant, 'Give me two dollars to win on Willow Way in the first race at Hollywood Park,' and defendant replied 'O.K.' This was held sufficient to show that defendant was engaged in bookmaking and accepted a wager on a race. In *People* v. *Chaney,* 147 Cal.App.2d 740 [305 P.2d 955], the officer heard the defendant say he wanted 'two to win on Jet Action in the eighth at Gulfstream,' and defendant's reply 'Okay.' This was held to clearly justify an inference that Fraser was placing a bet on the race in question and that defendant was accepting such bet. In the Burch case, *supra,* the court pointed out that a volume of gambling is unnecessary to establish the offense, and that accepting one wager constitutes a violation of the code section."

In *People* v. *Meade, supra,* a conviction was sustained upon evidence similar to that here presented. In that decision the court commented: "The testimony hereinabove narrated discloses that at the time of his arrest, appellant was in possession of betting paraphernalia, to wit: a piece of scratch sheet, containing pencilled notations respecting various horses running in races at Santa Anita on the day in question. Moreover, his telephone conversations in the presence of the witness Ward were directly related to these notations."

Appellant argues that the cryptic language of the conversation overheard by Officer May was meaningless without explanation in the form of expert testimony. We think this argument is based upon an unrealistic premise. In recent

years, the advertising and reporting of horse racing events and the discussions of the terms and results of wagering thereon, have become so extensive in every modern medium of communication that it would be a rare individual of adult years who had not by now acquired, either voluntarily or involuntarily, a fairly adequate understanding of the essential elements of these wagering contracts and of the terms in which they are made. (See *People* v. *Overman,* 149 Cal.App.2d 125, 131 [307 P.2d 1000].) ■ Even if he did not understand the precise terms of the wagering contract as expressed in the language of the testimony, the average individual would at least understand that, in the context of their utterance, the words "Give me 2 and 2 on Master Boing in the seventh" constituted an offer to wager on a horse race; that the response, "Okay" was an acceptance of the offer, and that the entry on the scratch sheet was intended to be a record of the wager. Such understanding, we are sure, is well within the scope of common knowledge in this jurisdiction. (*People* v. *Race,* 151 Cal.App.2d 678, 685 [312 P.2d 322].)

■ The failure of the appellant to testify or to offer any evidence in his own behalf could have been considered by the trial court "as tending to indicate the truth of such evidence and as indicating that among the inferences that may reasonably be drawn therefrom, those unfavorable to the defendant are the more probable." (*People* v. *Adamson,* 27 Cal.2d 478, 490-491 [165 P.2d 3]; *People* v. *Smith,* 113 Cal.App.2d 416, 419 [248 P.2d 444]; *People* v. *Goldstein,* 139 Cal.App.2d 146, 155 [293 P.2d 495]; *People* v. *Race, supra,* p. 686.)

■ Appellant's contention that the trial court lacked jurisdiction is equally untenable. Although not clearly articulated, the essence of the argument seems to be this: that section 19662 of the Business and Professions Code, being a later and special enactment, superseded the provisions of Penal Code, section 337a, with respect to cases in which the wagering involved horse racing in California, and that said Penal Code section remains applicable only to wagering on horse races at meetings outside the state. Business and Professions Code, section 19662, provides that, "Any person wagering upon the results of a horse race, except in the pari-mutuel or mutual method of wagering, when the wagering is conducted by a licensee and upon the grounds or inclosure of the licensee, shall be punished as provided in the Penal Code."

The foregoing statute was enacted in 1941 and derives from the Horse Racing Act, Statutes of 1933, chapter 769 (*In re*

*Goddard,* 24 Cal.App.2d 132, 136, 137 [74 P.2d 818]). The Horse Racing Act from which were derived the statutory enactments relied upon by appellant "merely provided one exception under which one form of betting on horse races was permissible in California. It is clear from a study of the act of 1933, as amended, that the legislature not only did not intend to repeal the general law prohibiting general betting and registering of bets on horse races, but intended that the law remain in force subject to one exception, namely, that pari-mutuel betting be permitted if conducted in the manner and under the conditions specified in the act." (*People* v. *Torrey,* 16 Cal.App.2d 470, 472 [60 P.2d 900]; see also *People* v. *Pierce,* 14 Cal.2d 639, 643 [96 P.2d 784].)

The judgment, and the order denying motion for a new trial are, and each is affirmed.

White, P. J., and Fourt, J., concurred.