[Crim. No. 7059.   Second Dist., Div. One.   Aug. 8, 1960.]

THE PEOPLE, Respondent, v. JAMES E. GRAY,
Appellant.

John J. Bradley and Max Solomon for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

WOOD, P. J.—In count 1 of an information, defendant Gray, one Lane, and one Loenbruck were accused of violating section 337a, subdivision 1, of the Penal Code (bookmaking on result of horse racing). In count 2, Lane and Loenbruck were accused of violating subdivision 2 of said section (occupying a bar room with paraphernalia for purpose of recording bets on horse racing). In count 3, defendants Gray, Lane, and Loenbruck were accused of violating subdivision 3 of said section (receiving and forwarding money bet on horse racing). In count 4, Lane was accused of violating subdivision 5 of said section (permitting Loenbruck to occupy a room for purpose of recording bets on horse racing).

Lane's motion to dismiss was granted. Trial by jury was waived as to Gray and Loenbruck. Upon stipulation the cause was submitted on the transcript of the preliminary examination, subject to the right to offer additional evidence. Gray was adjudged guilty on count 1 (bookmaking) and not guilty on count 3 (receiving money). Loenbruck was adjudged guilty on counts 1 and 3. Gray appeals from the judgment and the order denying his motion for a new trial.

Appellant contends that the evidence was insufficient to support the judgment.

During a period of several weeks prior to the arrest herein on April 22, 1954, Officer Bovenseip had spent considerable time in a bar, in Van Nuys, known as The Club. He told the operators of the bar that he worked for the gas company. On April 4, 1959, he saw defendant Lane behind the bar. A few minutes thereafter Lane went into the rear office and used the telephone. The officer went into that room and, after telling Lane that he wanted to wager on a horse, he gave Lane $6.00 and a slip of paper on which was written the name of a horse, the number of the race, and amount of the bet. On April 6 the officer telephoned the bar and talked with Lane and Loenbruck, and made an appointment to meet Loenbruck that afternoon. At the appointed time the officer went to the parking lot at the rear of the bar and sat with Loenbruck in Loenbruck's automobile and talked about horse racing. Then the officer gave him two wagers on certain horse races, and also gave him $5.00.

On April 22, about 12:30 p.m., the officer went to the bar and, after giving three wagers to Loenbruck, he said that he would like to get a telephone number where he could make wagers without having to contact anyone personally. Loenbruck replied that if the officer would give him $50 he would give the officer a telephone number where the officer could place wagers up to $75; or if the officer would give him $100 the officer could place wagers, at that number, up to $150. About 2 p.m. of that day, the officer returned to the bar and gave Loenbruck $50, and Loenbruck gave him telephone number HOllywood 7-6896, and told him to say, when he called that number, "Bob for number one," and then to immediately start giving the "action." Loenbruck explained that he was number one and that other persons were number two, three, and four. On that same day the officer checked that telephone number and found that it was registered to Paul Gray at 1825 Cahuenga Boulevard, apartment 308-A. Then Officer Bovenseip and his fellow officers went to said address and some of his fellow officers kept the apartment house under surveillance, and another fellow officer (inside the house) kept the apartment 308-A under surveillance, while Officer Bovenseip went to a telephone just north of the apartment house and placed a call to telephone number HOllywood 7-6896. Before Officer Bovenseip went to the telephone, the officers adopted a plan whereby Officer Bovenseip, after telephoning the number, would give a signal to the other officers to proceed to make the arrest.

Officer Bovenseip testified that he placed a telephone call to HOllywood 7-6896 and the telephone was answered by a male voice; the officer identified himself as "Bob for number one," and he said, "In the 6th, Over High, five to win"; the male voice repeated the wager; then the officer said, "7th, Bounty Bay, two across"; the voice repeated the wager; the officer gave three additional wagers, and the voice repeated them; according to daily newspapers, the horses referred to in the telephone conversation were scheduled to run in races at Tanforan on that day, April 22; after that conversation, the officer signaled to his fellow officers who had the apartment under surveillance and they entered the apartment 308-A.

Officer Halliburton, one of the fellow officers, testified that, pursuant to pre-arrangement regarding surveillance and the signal, he was just outside the door of apartment 308-A; when he received a signal, which was the approach of Officer Van Vleck, he forced the apartment door open; then he saw defend-

ant Gray at a small table where there was a telephone, and Gray was wiping a piece of glass; during the time he (witness) was outside the apartment, no person entered or left that apartment; at the time he (witness) entered the apartment Gray was the only person in the apartment.

Officer Bovenseip testified that after he gave the signal he went to the apartment, arriving there just after his three fellow officers had entered; at that time Gray was the only person, other than the officers, in the apartment; it was a small one-room apartment, with a closet and bathroom; there was one exit or entrance; in the apartment there was a single bed, small desk, a telephone, chair, and dresser; while the witness was in the apartment, the telephone rang and he (witness) answered it, and a male voice said, "Bud for number three. At Tanforan in the 6th Malcolm G, one to win, one to place. In the 7th Pemaroth, one to win, one to place. In the 8th Hemet Star, one to win. In the 8th Go and Call, one to win. Total of $6.00."; the witness replied, "Got it," and then he hung up the receiver; while the witness was in the apartment, at the time of the arrest and in the presence of the three other officers, he had a conversation with Gray. When the deputy district attorney asked the officer to state the conversation, counsel for Gray objected thereto on the ground that the corpus delicti had not been established. The objection was overruled. Thereupon, the officer testified that Gray stated that he had nothing to say, and that "he was told that if he got caught he shouldn't say anything until he talked to his lawyer."

Defendant Gray testified that he was present at the preliminary examination when Officer Bovenseip testified that he made a telephone call to an apartment and he made a wager with Gray on a horse race. Gray's counsel asked him: "Did Mr. Bovenseip make a wager with you?"; Gray answered, "He did not." On cross-examination, Gray testified that he was alone in the apartment at the time Officer Halliburton entered the apartment; during the half hour before Officer Halliburton entered, no one (other than Gray) had been in the apartment; he (Gray) had been convicted of a felony (forgery).

Appellant contends, as above stated, that the evidence was insufficient to support the judgment. He argues that the testimony of Officer Bovenseip does not identify appellant as the person who answered the telephone when the officer telephoned prior to the arrest; that, in the absence of identifying the voice that answered the telephone, no one could establish that the officer dialed the correct number, nor

could it be established that the telephone operated properly, if it were dialed correctly; that the testimony of the officer as to the statement of appellant (regarding what he should do ''if he got caught'') was not admissible because the corpus delicti had not been established. The officer testified that he did call the number which Loenbruck had given to him in exchange for $50; that he followed the advice of Loenbruck as to what he should say when the telephone was answered, and he did say, ''Bob for number one,'' and he immediately stated his several wagers; the answering voice repeated the wagers. The telephone number, given by Loenbruck, was registered to Paul Gray at the apartment which the officers kept under surveillance. During the time the officers were watching the premises no one entered or left the apartment. When the officers entered the apartment, the appellant was the only person there and he was sitting at a table upon which there was a telephone, and he was wiping a piece of glass. While the officers were in the apartment the telephone rang, and when it was answered a voice said, ''Bud for number three,'' which was the same kind of introductory remark which Officer Bovenseip had been told to use when he called that number. The person who made that call placed three wagers on horse races. Whether the officer called the telephone number which Loenbruck had given him was a question of fact for the trial court to determine from all the circumstances shown by the evidence. Whether he dialed correctly and whether the telephone operated properly were questions of fact. Appellant was convicted on count 1 only, and the principal question was whether there was substantial evidence that he accepted a wager on a horse race. He was not charged with occupying a room with books, papers, and paraphernalia for the purpose of receiving wagers. It is true, as appellant asserts, that no betting marker, or scratch sheet, or owe sheet, or other bookmaking record was found in the apartment. ■ A wager may be verbal. (*People* v. *Chaney,* 147 Cal.App.2d 740, 741 [305 P.2d 955].) ■ ''[P]roof of the corpus delicti by evidence of the conclusive and convincing character required to support a conviction of the offense charged is not a prerequisite to the reception in evidence of the extrajudicial statements of the accused. Prima facie proof is all that is necessary and the corpus delicti may be proved by circumstances shown in evidence or by inferences drawn from the facts established. ■ Direct or positive evidence is not essential, nor is it necessary that evidence in proof of the corpus delicti connect the accused with the commission of

the crime charged.'' (*People* v. *Bradford,* 95 Cal.App.2d 372, 379 [213 P.2d 37]; *People* v. *Race,* 151 Cal.App.2d 678, 683 [312 P.2d 322].) ■■■ In the present case, if the trial court found that the officer did make the telephone call and did make a wager with someone by that call, there was prima facie proof that a crime was committed and there was prima facie proof of the corpus delicti. The evidence herein would support such a finding. The court did not err in receiving the testimony of the officer as to the conversation he had with appellant while the officers were in the apartment. In that conversation the appellant said that he had nothing to say, and that ''he was told if he got caught he shouldn't say anything until he talked with his lawyer.'' That statement is more than a mere statement of an accused that he will not say anything until he talks to his lawyer. The portion of the statement to the effect that he had been told not to talk if he ''got caught,'' and the fact that he was following that advice by declining to talk, indicate consciousness of guilt and that he had been caught.

The evidence was sufficient to support the judgment.

The judgment and the order denying the motion for a new trial are affirmed.

Fourt, J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 5, 1960.